**Karen FRENCH, Jim French, and Joyce French, Appellants,**

v.

**Vincent GLORIOSO, Jr., Esq. and The Glorioso Law Firm, Appellees.**

**No. 04–02–00201–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 20, 2002.

Harry S. Bates, Hall & Bates, L.L.P., San Antonio, for Appellant.

Richard J. Reynolds, III, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, Corpus Christi, David P. Boyce, Wright & Greenhill, P.C., Austin, for Appellees.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice.

Opinion by CATHERINE STONE, Justice.

Karen, Jim, and Joyce French (the "Frenches") appeal the trial court's orders granting Vincent Glorioso's and the Glorioso Law Firm's (the "appellees") joint special appearance. According to the

Frenches, the trial court should have denied appellees' special appearance because appellees have sufficient contacts with Texas to support specific jurisdiction. We affirm the trial court's judgment.

## BACKGROUND

Karen French, a Texas resident, was shot by a gunman during a robbery attempt outside a parking garage in New Orleans, Louisiana. She sustained permanent damage to her spinal cord and was left a quadriplegic. Karen and her parents hired Dicky Grigg, an attorney from Austin, Texas, to pursue a lawsuit against the owners and operators of the parking facility where Karen was shot. Grigg, in turn, solicited attorney Vincent Glorioso, Jr., a Louisiana resident, to file suit for the Frenches in Louisiana.[1]

At the time of Karen's injury, she was covered by her employer's group health insurance plan. When this coverage expired, Karen became dependent upon Medicaid. Karen's future medical care was estimated at approximately five million dollars.

In November of 1998, the Frenches' lawsuit was settled. Glorioso deposited the settlement into the trust account of the Glorioso Law Firm. In July of 1999, Karen consulted Steve Skov, a Dallas attorney, for advice on how to maintain her Medicaid eligibility without forfeiting her settlement money. Skov told Karen she needed to have her settlement deposited directly into a "Special Needs Trust" ("SNT") to meet her objective, but because she had deposited her settlement into the appellees' trust account, she would lose her Medicaid eligibility. Following Karen's discovery, Karen and her parents filed suit

against Grigg, Glorioso, and the Glorioso Law Firm in Bexar County, Texas for legal malpractice, negligent misrepresentation, breach of contract, and breach of fiduciary duty. The appellees filed a joint special appearance.

The trial court held a special appearance hearing. At the hearing, the Frenches argued appellees misadvised Karen regarding the need for a SNT on at least two occasions: (1) during a telephone call between Karen in Texas and Glorioso in Louisiana prior to settlement; and (2) during mediation in Louisiana. The appellees, however, denied misadvising Karen regarding the need for a SNT. Following the hearing, the trial court granted the appellees' special appearance. The trial court did not file findings of fact or conclusions of law. The Frenches appeal the trial court's orders granting appellees' special appearances.

## STANDARD OF REVIEW

■■■ Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). However, in resolving this question of law, a trial court frequently must resolve questions of fact. *Coleman*, 83 S.W.3d at 806; *BMC Software*, 83 S.W.3d at 794. On appeal, we review the trial court's decision to grant a special appearance *de novo*. *Coleman*, 83 S.W.3d at 806; *BMC Software*, 83 S.W.3d at 794. If the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we presume that the trial court resolved all factual disputes in favor of its

1. The law firm with which Glorioso is affiliated, The Glorioso Law Firm, is a corporation chartered in the State of Louisiana. Its principal office is located in New Orleans, Louisi-

ana. The firm does not maintain an office or solicit business in Texas. None of the firm's shareholders, officers, directors, or associates are licensed to practice law in Texas.

judgment. *Coleman*, 83 S.W.3d at 806; *BMC Software*, 83 S.W.3d at 795. Importantly, when the record includes both the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795. In reviewing a legal sufficiency challenge, the no evidence challenge fails if there is more than a scintilla of evidence to support the finding. *Id.* In reviewing a factual sufficiency challenge, we set aside the trial court's decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### PERSONAL JURISDICTION

■■■■ A Texas court may exercise jurisdiction over a nonresident defendant only if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and federal constitutional guarantees of due process. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute extends "as far as the federal constitutional requirements of due process will permit." *Id.* Therefore, the requirements of the Texas long-arm statute are met if exercising jurisdiction comports with federal due process limitations. *Id.* When determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction, we thus rely on precedent from the United States Supreme Court as well as our own state's decisions. *BMC Software*, 83 S.W.3d at 795.

■■■■ Personal jurisdiction over a nonresident is constitutional when: (1) the defendant has established "minimum contacts" with Texas; and (2) the exercise of jurisdiction comports with. the traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum-contacts analysis requires a defendant to "purposefully avail" itself of the privileges and benefits of conducting business within Texas. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities, whether they are direct acts within Texas or conduct outside Texas, must justify a court concluding that the defendant could have reasonably anticipated being called into a Texas court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant is not subject to the jurisdiction of this state if its Texas contacts are random, fortuitous, or attenuated. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174. Therefore, the minimum-contacts analysis does not depend upon the number of the defendant's contacts, but rather, upon the quality and nature of the contacts. *Guardian Royal*, 815 S.W.2d at 230 n. 11.

■■■■ A defendant's contacts with Texas can give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal*, 815 S.W.2d at 227. Specific jurisdiction is established when: (1) the defendant's contacts with the forum are purposeful; and (2) the cause of action arises from or relates to defendant's contacts. *Guardian Royal*, 815 S.W.2d at 227–28. General jurisdiction is established "when a defendant's contacts in the forum are continuous and systematic so that the forum may exercise jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Id.* at 228. In the case at bar, our analysis is limited to whether Texas has

specific personal jurisdiction over appellees.[2]

## DISCUSSION

■■■ As stated in the Frenches' sole issue, the trial court should have denied appellees' special appearance because appellees have sufficient minimum contacts with Texas to assert specific jurisdiction over them. Specifically, the Frenches contend appellees brought themselves within the reach of Texas' long-arm statute by committing a tort in Texas when appellees told Karen she could, without jeopardizing her Medicaid eligibility, wait until after her lawsuit was settled to establish a SNT.[3] The Frenches support their argument by relying on *Memorial Hospital System v. Fisher Insurance Agency, Inc.*, 835 S.W.2d 645, 648 (Tex.App.-Houston [14th Dist.] 1992, no writ) and *Rowland & Rowland, P.C. v. Texas Employers Indemnity Co.*, 973 S.W.2d 432 (Tex.App.-Austin 1998, no pet.).

In *Memorial*, the question presented was whether a Texas court had jurisdiction over a specially-appearing defendant whose sole contact with Texas was a single telephone call wherein it made misrepresentations to the plaintiff. *Memorial*, 835 S.W.2d at 648. There, an employee of Robert Kelly Company presented himself for admission to Memorial Hospital for treatment of a work-related injury. *Id.* The hospital contacted Fisher Insurance Agency in Mississippi to determine whether the employee had workers' compensation in-

surance coverage. *Id.* Fisher advised the hospital that workers' compensation covered Robert Kelly Company employees. *Id.* Relying on Fisher's representations, the hospital admitted the injured employee and provided treatment. *Id.* The hospital later learned the workers' compensation insurance policy did not provide coverage in the State of Texas. *Id.* The *Memorial* court concluded that Fisher's telephone conversation with the hospital provided sufficient minimum contacts with Texas for the trial court to exercise specific jurisdiction over Fisher. *Id.* at 651. According to the *Memorial* court, when a nonresident sends false information into Texas and causes economic injury to a Texas resident within Texas, the nonresident purposefully avails itself of the benefits and protections of Texas law. *Id.*

*Rowland & Rowland* focuses on representations in a letter written by a nonresident defendant, a Tennessee law firm, to the plaintiff, a Texas indemnity company. *Rowland & Rowland*, 973 S.W.2d at 433–34. The Texas company, relying on the law firm's written promise to protect the company's interest in a wrongful death suit pending in Tennessee, did not intervene in the Tennessee litigation. *Id.* at 434. When the lawsuit concluded, the law firm distributed the entire recovery to the wrongful death claimants to the exclusion of the Texas company, which then sued the law firm in Texas for negligent misrepresentation. *Id.* The Austin court of appeals held that the law firm's promise to protect the company's interest in Texas and the

---

**2.** The Frenches conceded in their brief, as well as at oral argument, "the sole means of jurisdiction asserted is premised upon specific jurisdiction."

**3.** This representation is the basis for the legal malpractice, negligent misrepresentation, breach of contract, and breach of fiduciary allegations in the Frenches' petition. Although the Frenches present their claims as

separate causes of action, their suit against appellees is essentially one for professional negligence. *See Eakin v. Acosta*, 21 S.W.3d 405, 410 (Tex.App.-San Antonio 2000, no pet.). Nevertheless, in light of appellees' failure to file special exceptions, for purposes of this opinion we shall presume the Frenches can pursue each of the aforementioned causes of action as separate claims against appellees.

firm's distribution of the recovery in Texas were sufficient minimum contacts with this state to satisfy due process because it was these specific contacts that gave rise to the Texas company's claims against the law firm. *Id.* at 435–36.

While *Memorial* and *Rowland & Rowland* seem similar to the instant case, the issues are not the same.[4] In *Memorial* and *Rowland & Rowland,* there was no disagreement between the parties about the content of the parties' communication. All of the parties in these cases appear to have agreed that, during the parties' communications, false representations were made. Thus, the initial jurisdictional issue in *Memorial* and *Rowland & Rowland* was whether the nonresident defendants had sufficient contacts with Texas to be called into court to defend the uncontested tort alleged. In the case at bar, however, we need never reach the issue of whether appellees had sufficient minimum contacts with Texas to invoke jurisdiction over them. While the parties agree they discussed settling Karen's case in a manner which would preserve Karen's Medicaid eligibility, they disagree on whether Glorioso ever told Karen she could, without jeopardizing her Medicaid eligibility, set up a SNT after her case was settled. Therefore, the first and only jurisdictional issue presented here is whether the act of misrepresenting Texas Medicaid law ever occurred.

▮▮▮▮▮ The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965). Upon filing a special appearance, however, the nonresident defendant assumes the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). When reaching a decision to decline jurisdiction based on a defendant's alleged commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *Ring Power Sys. v. Int'l De Comercio Y Consultoria, S.A.,* 39 S.W.3d 350, 353 (Tex. App.-Houston [14th Dist.] 2001, no pet.); *Arterbury v. Am. Bank & Trust Co.,* 553 S.W.2d 943, 948 (Tex.Civ.App.-Texarkana 1977, no writ). In other words, ultimate liability in tort is not a jurisdictional fact, although in some cases it may be. *See Arterbury,* 553 S.W.2d at 948.

▮▮▮▮▮ Under the "commission of a tort" provisions of the Texas long-arm statute, a plaintiff meets his jurisdictional burden when: (1) he alleges the defendant is an author of an act or omission within this state; and (2) his petition states a cause of action in tort arising from such conduct. *Id.* Defendant's act or omission within the state is a sufficient basis for the exercise of jurisdiction to determine whether the act or omission gives rise to liability in tort. *Id.* However, where jurisdiction rests upon the fact the defendant committed a tortious act, the specially appearing defendant can defeat the exercise of jurisdiction by proving that he did not do the act alleged. *See Ross F. Meriwether & Assoc., Inc. v. Aulbach,* 686 S.W.2d 730, 732 (Tex.App.-San Antonio 1985, no writ). "There is no rule that a specially appearing defendant may not meet his jur-

---

4. The Frenches' reliance on two federal cases is likewise unpersuasive. In *Streber v. Hunter,* 221 F.3d 701 (5th Cir.2000), the court noted that "much of [the] ... malpractice occurred" in Texas, which alone provided basis for Texas jurisdiction. Likewise, jurisdiction was proper in Texas in *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208 (5th Cir.1999), because the defendant engaged in intentional fradulent conduct committed against a Texas resident. Thus, these cases are quite different from the case at bar.

isdictional burden by proving the nonexistence of an essential jurisdictional fact, simply because such proof would also disprove the existence of a necessary element of the plaintiff's cause of action." *Id.* Such a rule would bar a defendant from challenging jurisdiction by showing he committed no act which would justify a Texas court's assertion of jurisdiction. *Id.* "The fact that the showing of an absence of the factual basis for exercise of jurisdiction also tends to show the absence of liability is irrelevant, cannot in any way limit the right of the defendant to establish the nonexistence of the essential jurisdictional fact." *Id.*

At the special appearance hearing, the trial court had before it the parties' pleadings, affidavits from Karen and Glorioso, and Glorioso's deposition testimony. The primary issue for the trial court to resolve from the evidence presented was whether Glorioso told Karen she could, without jeopardizing her Medicaid eligibility, set up a SNT after her case was settled. Because the trial court did not file findings of fact and conclusions of law, we presume the court resolved this factual dispute in favor of appellees. *See Coleman,* 83 S.W.3d at 806.

According to Karen's affidavit, Glorioso told Karen she could, without jeopardizing her Medicaid eligibility, set up a SNT after her case was settled. Glorioso made this representation on two occasions, once during a telephone conversation with Karen and once during the mediation in Louisiana.

Glorioso's affidavit reveals he had telephone conversations with Karen about "rendering the legal services in Louisiana." The affidavit also states Glorioso did not purposefully avail himself of the benefits or protections of Texas law. Although Glorioso's deposition testimony reveals Glorioso knew Karen wanted to settle her

case in a manner that would preserve her Medicaid eligibility, it reveals Karen told Glorioso she did not want to set up a SNT because she did not want to lose control over her settlement. According to Glorioso, they discussed setting up a SNT before and/or at the mediation in Louisiana. Glorioso denies ever telling Karen she could wait until after settling her case to establish a SNT. In light of Karen's desire not to lose control over her settlement, Glorioso did not discuss establishing a SNT trust again until Karen raised the issue after settlement had occurred.

Through this conflicting evidence, the parties placed in issue whether Glorioso ever made any misrepresentations to Karen. The trial court implicitly resolved this factual determination against the Frenches. Thus, by presenting legally and factually sufficient evidence that Glorioso never made any misrepresentations to Karen, appellees negated an essential jurisdictional element of the Frenches' claim and eliminated the basis for the power of the Texas court to determine the issue of ultimate tort liability. *See Meriwether,* 686 S.W.2d at 732. Regardless of whether we would have decided this factual matter differently than did the trial court, and regardless of what a jury may decide upon full factual development in a proper forum, we hold the trial court properly granted appellees' special appearance because there is legally and factually sufficient evidence to support the court's implicit findings.

### CONCLUSION

Because appellees negated all bases of personal jurisdiction under the Texas long-arm statute, we hold that the trial court properly granted appellees' special appearance.