MEMORANDUM OPINION




No. 04-02-00682-CV



Rafael RAMON, Rafael Ramon, Jr., and Diana Ramon,


Appellants



v.



Robert JENSEN, Tanya Jensen, and David Walker 

d/b/a Robert Jensen Farms, David Walker Farms and Two Good,

Appellees



From the 38th Judicial District Court, Uvalde County, Texas


Trial Court No. 2001-12-22,728-CV


Honorable Mickey R. Pennington, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: March 19, 2003


AFFIRMED

 Appellants Rafael Ramon, Sr., Rafael Ramon, Jr., and Diana Ramon sued Appellees Robert
Jensen, Tanya Jensen, and David Walker d/b/a Robert Jensen Farms, David Walker Farms and Two
Good for breach of contract. In response, the appellees filed a special appearance. The trial court
sustained the special appearance. The Ramons appeal that order. We overrule the Ramons' sole
issue and affirm the order of the trial court.

Background


 Rafael Ramon, Jr. is the sole proprietor of Double R Produce. Rafael Ramon, Jr.'s parents,
Rafael Ramon, Sr. ("Ralph") and Diana Ramon are his employees and handle the day-to-day
operations of Double R Produce. In 1998, Diana Ramon was approached by Isaias Pompa, an
acquaintance, who told her that a man named Robert Jensen needed to have someone harvest his
onion fields in Colorado. According to Ralph Ramon, Pompa is Robert Jensen's field man. (1) Robert
Jensen, however, affirms in his affidavit that Pompa is only an acquaintance of his. Based on
Pompa's tip, Ralph Ramon traveled to Robert Jensen's farm in Colorado and proposed that R & D
Produce (now Double R Produce) perform onion harvesting activities on Jensen's farm. Ralph
Ramon and Jensen reached an agreement in Jensen's Colorado office. This business relationship
continued and Double R Produce harvested the onions on Jensen's farm for the years 1999 and
2000.

 According to Ralph Ramon, Pompa told him in the winter of 2000 that Robert Jensen was
going to be in Texas and wanted to talk to Ralph Ramon about the 2001 onion crop. Pompa, Jensen,
and he met in McAllen, Texas and discussed the upcoming work to be done on Jensen's farm. They
also discussed Ralph Ramon harvesting fields on David Walker's farm in Kansas. Later, Ralph
Ramon traveled to Colorado and told Jensen that he wanted an increase in price of four cents per
bag. They did not reach an agreement. After Ralph Ramon returned to Texas, Jensen called him
and told him that Jensen would agree to the increased price. 

 Jensen disagrees with this version of events and affirms that he never negotiated the contract
with Ralph Ramon while in Texas:

 I have never traveled to Texas to negotiate terms of my business relationship with
either R & D Produce or RR Produce or Rafael Ramon Produce. I have only met
with Rafael Ramon, Sr. in Texas on one occasion. Sometime in the year 2000, I
traveled to Texas to meet an acquaintance, Isais [sic] Pompa. Mr. Pompa has a
residence in Texas. He is an independent contractor that has done work for me in
Colorado in years past. I traveled to Texas to meet with Mr. Pompa so that we could
visit area onion farms to examine the farming techniques being used by some of the
local farmers that he knew. I did not conduct any business or negotiate any business
agreements during this visit. When I arrived to meet with Mr. Pompa, Rafael
Ramon, Sr. was present. Rafael Ramon, Sr. and Isais [sic] Pompa are acquaintances
and Ramon told me he had asked Pompa if he could go with us to visit the area
farms. Ramon did go with us, however, we did not discuss the business relationship
between Jensen Farms and R & D Produce. We certainly did not negotiate the terms
to any business relationship between the two businesses, as those terms had already
been worked out. 

With regard to David Walker's farm, Jensen affirms that it was he who contracted with Ralph
Ramon about harvesting Walker's fields:

 In addition to the work that I contracted with Rafael Ramon, Sr. to perform on
Jensen Farms, I also contracted with him to provide harvesting services on farmland
owned by David Walker Farms and Two Good, LLC. I have a separate contractual
arrangement with David Walker Farms and Two Good, LLC regarding the payment
for harvesting services. Neither David Walker d/b/a David Walker Farms nor Two
Good, LLC has ever authorized [me] to negotiate, has ever negotiated or accepted
any labor directly from any of the Plaintiffs in this suit. All of the work performed
by Rafael Ramon d/b/a Double R Produce on any property owned by Jensen Farms,
David Walker Farms or Two Good, LLC was all negotiated for and contracted
through Robert Jensen d/b/a Jensen Farms.

Standard of Review

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident
defendant within the personal jurisdiction of a Texas court. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 793 (Tex. 2002). A defendant challenging the court's assertion of
personal jurisdiction must negate all jurisdictional bases. Id.

 Whether a court has personal jurisdiction over a defendant is a question of law, which we
review de novo. Id. at 794. However, the trial court frequently must resolve questions of fact before
deciding the jurisdiction question. (2) Id. When, as here, the trial court does not issue findings of fact
and conclusions of law with its special-appearance ruling, we presume that the trial court resolved
all factual disputes in favor of its judgment. Id. at 795; French v. Glorioso, 94 S.W.3d 739, 743-44
(Tex. App.--San Antonio 2002, no pet.). When the appellate record includes both the reporter's
and clerk's records, however, these implied findings are not conclusive and may be challenged for
legal and factual sufficiency. BMC Software, 83 S.W.3d at 795.

Personal Jurisdiction


 In their sole issue, the Ramons argue that the trial court should have denied the appellees'
special appearance because they have sufficient minimum contacts with Texas to assert specific
jurisdiction over them. A court may assert personal jurisdiction over a nonresident defendant only
if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S.
Constitution and the Texas long-arm statute are satisfied. See U.S. Const. amend. XIV, § 1; Tex.
Civ. Prac & Rem. Code Ann. § 17.042 (Vernon 1997); Helicopteros Nacionales de Colombia v.
Hall, 466 U.S. 408, 413-14 (1984). The long-arm statute allows a court to exercise personal
jurisdiction over a nonresident defendant that does business in Texas. Tex. Civ. Prac & Rem. Code
Ann. § 17.042 (Vernon 1997). In addition to a discrete list of activities that constitute doing
business in Texas, the statute provides that "other acts" by the nonresident can satisfy the
requirement. Id. The Texas Supreme Court has interpreted this broad statutory language "to reach
as far as the federal constitutional requirements of due process will allow." CSR Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996) (citation omitted). Consequently, the requirements of the Texas
long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due
process limitations. Id.

 Under the Due Process Clause of the Fourteenth Amendment, a defendant must have certain
minimum contacts with the forum "such that the maintenance of the suit does not offend traditional
notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310,
316 (1945) (internal quotation marks omitted). A nonresident defendant that has purposefully
availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has
sufficient contacts with the forum to confer personal jurisdiction. See Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475-76 (1985). A defendant should not be subject to the jurisdiction of
a foreign court based upon "random," "fortuitous," or "attenuated" contacts. Id. 

 A defendant's contacts with a forum can give rise to either general or specific jurisdiction.
General jurisdiction is present when a defendant's contacts are continuous and systematic,
permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action
did not arise from or relate to activities conducted within the forum state. See Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). General jurisdiction requires a showing that the
defendant conducted substantial activities within the forum, a more demanding minimum contacts
analysis than for specific jurisdiction. See Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991). In contrast, specific jurisdiction is established if
the defendant's alleged liability arises from or is related to an activity conducted within the forum.
See id. at 227.

A. Robert Jensen

 Here, the Ramons have alleged acts by Robert Jensen that would confer both general and
specific jurisdiction. With regard to general jurisdiction, the Ramons claim that for years, Jensen
has had an employee, agent, or representative who lived in Texas and who was recruiting Texas
residents for work outside of Texas. This fact, however, is in dispute. Ralph Ramon testified in his
deposition that both Robert Jensen and Isaias Pompa told him that Pompa was Jensen's field man. 
In contrast, Jensen affirms in his affidavit that Pompa is only an acquaintance of his, an independent
contractor that had, in previous years, done work for him in Colorado. Under our standard of
review, all facts necessary to support the trial court's order and supported by the evidence are
implied. BMC Software, 83 S.W.3d at 795. (3) Thus, we must presume that the trial court resolved
this factual dispute in favor of its judgment. Id.; French, 94 S.W.2d at 743-44. Under this implied
finding, Jensen's contacts are not continuous and systematic.

 The Ramons also alleged acts by Jensen that could confer specific jurisdiction: Jensen's trip
to Texas in which he discussed with Ralph Ramon the work to be done during the 2001 harvest and
Jensen's phone call to Texas during which he and Ralph Ramon agreed to the increased price. Once
again, however, Jensen disputes Ralph Ramon's version. Jensen affirms in his affidavit that he did
not discuss his business relationship with Double R Produce nor did he negotiate any business
agreements during his visit to Texas in 2000. As far as the phone call to Texas to accept the
increased price, Jensen affirms that Ralph Ramon and he negotiated several small modifications to
their business arrangement, but that all of these discussions took place in his office in Colorado.
Again, we must resolve this factual dispute in favor of the trial court's judgment. Presuming that
Jensen did not have any discussions about his business relationship with Double R Produce while
in Texas and that all discussions about their business relationship took place in Colorado, Jensen
did not have sufficient minimum contacts with Texas to subject him to specific jurisdiction.

B. Tanya Jensen

 The Ramons allege that Robert Jensen spoke for both Tanya Jensen and David Walker.
Robert Jensen, however, affirms that he is the sole proprietor of Jensen Farms d/b/a Robert Jensen.
His wife, Tanya, does not control or direct the operations of Jensen Farms d/b/a Robert Jensen.
Likewise, Tanya Jensen affirms that Jensen Farms is a d/b/a for her husband, Robert, who operates
as a sole proprietor. She is not an employee of Jensen Farms and does not generally take part in the
day-to-day operations of the business. Further, Tanya affirms that she has never negotiated any
business agreements or contracts or otherwise conducted any business with the Ramons. Implying
all facts supported by the evidence necessary to support the trial court's order, we hold that Tanya
Jensen did not have sufficient minimum contacts with Texas to subject her to its jurisdiction.

C. David Walker

 Like Tanya Jensen, the Ramons allege that Robert Jensen spoke for David Walker because
they were business partners. According to Ralph Ramon's deposition testimony, Robert Jensen told
him that he and David Walker were partners. In his affidavit, however, Robert Jensen affirms that
he had a separate contractual arrangement with David Walker Farms and Two Good, LLC regarding
the payment for harvesting services. Jensen affirms that neither David Walker d/b/a David Walker
Farms nor Two Good, LLC ever authorized him to negotiate on their behalf. Similarly, David
Walker affirms that in 2001, Two Good Farms paid Robert Jensen to provide harvesting services
for the crops grown on David Walker Farms. He did not, however, negotiate or enter into a business
agreement with Double R Produce:

 It is my understanding that [Robert Jensen], in turn, contracted with Rafael Ramon,
Sr. to provide harvesting services on land operated by Two Good Farms and owned
by David Walker Farms. However, I am not aware of the details of the contractual
arrangement between Mr. Jensen and Mr. Ramon, Sr. I was not present when any
such agreements were negotiated between Mr. Jensen and Mr. Ramon, Sr. I did not
participate in any negotiations or any business arrangements between Mr. Jensen and
Mr. Ramon, Sr. I have never spoken with any of the Plaintiffs in Texas. I have
never traveled to the State of Texas to engage services of any of the Plaintiffs.

Implying all facts supported by the evidence necessary to support the trial court's order, we hold that
David Walker did not have sufficient minimum contacts with Texas to subject him to its
jurisdiction.

Conclusion


 Because we have concluded that none of the appellees had sufficient contacts with Texas
to subject them to jurisdiction here, we affirm the trial court's order sustaining the appellees' special
appearance.


 Karen Angelini, Justice


Publish
1. Ralph Ramon testified in his deposition that both Robert Jensen and Isaias Pompa told him that Pompa was
Jensen's field man.
2. Pursuant to Texas Rule of Civil Procedure 120a, the trial "court shall determine the special appearance on the
basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed
by the parties, the results of discovery processes, and any oral testimony. The affidavits, if any, shall be served at least
seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible
in evidence, and shall show affirmatively that the affiant is competent to testify." Tex. R. Civ. P. 120a.
3. The Ramons have not challenged any such implied findings for legal and factual sufficiency. BMC Software,
83 S.W.3d at 794 (noting that when appellate record includes both reporter's and clerk's records, implied findings are
not conclusive and may be challenged for legal and factual sufficiency).