# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00283-CV

Jerome I. Wright & Associates, Inc. and Jerome I. Wright, Appellants

v.

First Metro Limited Partnership d/b/a Synergy Center North, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN304004, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## MEMORANDUM OPINION

In a suit brought by appellee, First Metro Limited Partnership d/b/a Synergy Center North ("First Metro"), to enforce a lease against appellants, Jerome I. Wright ("Jerome") and Jerome I. Wright & Associates, Inc. ("JWA"), the trial court denied appellants' special appearances. Appellants now seek an accelerated interlocutory appeal, claiming that the trial court erred by exercising personal jurisdiction over them. Appellants assert that there is a lack of minimum contacts between them and Texas to support jurisdiction. Because we find sufficient evidence in the record to support a finding of specific jurisdiction, we affirm the denial of the special appearance.

## BACKGROUND

Jerome Wright is a life-long resident of Illinois. He is the president of JWA, an accounting and tax services corporation located and incorporated in Illinois. In the fall of 2000, one

of Jerome's sons, Gary, found himself in severe financial trouble and moved from Illinois to the Austin area for a "fresh start." Jerome agreed to help Gary and his family get back on their feet. Using his superior credit and financial resources, Jerome personally signed a mortgage and put down over $28,000 to obtain a home for Gary in Cedar Park, Texas worth approximately $250,000 (the "Pagedale property"). Jerome then visited Gary and his family in Texas two to four times between 2000 and 2003. Jerome also leased two cars for Gary and Gary's son to use in Texas. In regards to one of these vehicles, Jerome was notified by the financing company in December 2003 that "newly enacted Texas Tax Code . . . provides that [certain] vehicles . . . may qualify for a property tax exemption." Listing the Pagedale property as his street address, Jerome signed a notarized affidavit swearing that he lived in Texas and filed it with the Texas taxing authorities. In addition, five checks and three wire transfers, averaging $4,300 each, were sent to Gary in Texas by Jerome and/or JWA.[1] On one occasion, Jerome transferred $100,000 to Gary. Appellants testified that this money was for a real estate investment which later fell through and that Gary returned the money. The record contains no evidence of repayment. Additionally, Jerome entrusted Gary with a durable power of attorney to act on Jerome's behalf. In October 2000 and April 2001, Jerome signed statutory forms naming Gary as his attorney-in-fact.

Despite his father's monetary support, Gary continued to have financial difficulties. He declared bankruptcy in August 2001, approximately one year after relocating. When Gary moved to Texas, he changed careers from a commodities broker to a mortgage agent. Initially he

---

[1] Jerome testified that some of these amounts were loans, while others were outright gifts. No check or transfer had a specified purpose for which it was to be used, and there is no documentation of repayment by Gary for any of the amounts.

experienced moderate success in the Austin market and sought to open his own mortgage office in October 2001. Gary contacted Renee Hicks, a commercial leasing agent, who arranged negotiations with First Metro, a business engaged in leasing office spaces in the Synergy Center North. It soon became apparent that, due to Gary's past financial trouble and recent bankruptcy, his credit would not satisfy the lessor's security needs.

As a result, Gary and Hicks discussed using Jerome's credit as an alternative source of financial backing. Gary called his father and asked for a copy of Jerome's financial statement. The parties dispute the substance of that conversation, but Gary testified that he told his father he "wanted to see a copy of [Jerome's] financials, and the [leasing agents] wouldn't call [Jerome], they wouldn't bother him, but all [the leasing agents] want to see was a copy of his financials." Gary acknowledged that he understood the leasing agents would look to Jerome as financial security for the lease. In response to a question from the trial judge, Gary confirmed that Jerome gave him permission to show Jerome's financial statement to the person from whom Gary was going to lease the property. After the telephone conversation with Gary, Jerome authorized his secretary to send his financial statement to Gary on November 1, 2001. Gary provided a copy to Hicks, who attached it to the lease proposal and letter of intent she sent to First Metro. As of November 13, 2001, Jerome was listed as a guarantor on the lease. This was still not sufficient security for First Metro and it denied Gary's application.

After First Metro denied Gary's application, Gary represented to Hicks that Jerome had granted him a durable power of attorney. A new lease application was prepared on November 26, 2001, which named JWA as the primary obligor and was supported by a signed copy of Jerome's

3

financial statement. Gary testified that he signed Jerome's name on both documents. First Metro

accepted this second application and a lease agreement was formed. Gary also signed Jerome's name

to the lease documents, under the typewritten names "Jerome Wright and Associates" and "Jerome

I. Wright." Ultimately, the lease went into default and First Metro looked to Jerome for payment,

which he refused to tender. This gave rise to the underlying suit to enforce the lease.

In response to First Metro filing its original petition in the district court, Jerome and

JWA filed special appearances. At the conclusion of the special appearance hearing, the district

court found in favor of First Metro, thereby subjecting Jerome and JWA to jurisdiction in Texas.

Appellants sought specific findings of fact and conclusions of law, which the judge declined to issue.

Jerome and JWA now appeal the interlocutory order.

**ANALYSIS**

In seeking to bring a nonresident defendant into a Texas court, the plaintiff carries

an initial burden of pleading sufficient facts to support the exercise of personal jurisdiction over the

defendant, pursuant to the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchland,* 83

S.W.3d 789, 793 (Tex. 2002). To avoid litigating in Texas, the nonresident defendant must file a

special appearance. Tex. R. Civ. P. 120a. The burden then shifts to the defendant to negate all bases

of jurisdiction asserted by the plaintiff. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d

538, 548 (Tex. App.—Houston [14th Dist.] 2003, no pet.). After the trial court rules on the special

appearance, the losing party is entitled to an interlocutory appeal of that order. Tex. Civ. Prac. &

Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004). We review the issue of whether the trial court

has jurisdiction over the nonresident defendant as a question of law. *BMC Software Belgium, N.V.,*

4

83 S.W.3d at 794. We review the entire record *de novo* to determine whether the defendant satisfied its burden of negating all the jurisdictional facts. *Walker Ins. Servs.,* 108 S.W.3d at 548.

Because the jurisdictional inquiry often requires an initial resolution of underlying factual disputes, we may consider the trial court's factual findings. *Id.*; *French v. Glorioso,* 94 S.W.3d 739, 743 (Tex. App.—San Antonio 2002, no pet.); *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied). If the trial court issued specific findings of fact, then the appellant may challenge the legal and factual sufficiency of those fact findings. *BMC Software Belgium, N.V.,* 83 S.W.3d at 794. However, if the trial court declined to issue findings of fact, as here, then all facts necessary to support the grant or denial of the special appearance will be implied, as long as there is evidence in the record to support them. *Id.* at 795. These implied findings are not conclusive. *Id.* If a reporter's record and a clerk's record are included with the appeal, as they were here, then those documents may be used to raise factual and legal sufficiency challenges to the implied findings. *Id.*

A legal sufficiency challenge will only succeed upon proof that not even a scintilla of evidence can be found in the record to support the finding of fact or conclusion of law. *French,* 94 S.W.3d at 744. "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions." *Walker Ins. Servs.,* 108 S.W.3d at 548. A factual sufficiency challenge requires proof that the trial court's ruling was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *French,* 94 S.W.3d at 744; *Goodenbour,* 64 S.W.3d at 75. In conducting this review, we

consider the entire record, not just the evidence in support of the challenged fact. *Walker Ins. Servs.,* 108 S.W.3d at 548.

At the special appearance stage, the only issue to be resolved is whether the nonresident defendant may properly be subjected to jurisdiction by the Texas courts. *Id.* at 549. We are mindful that we must only consider the specific facts determinative of jurisdiction, without reaching the merits of the case. *French,* 94 S.W.3d at 746-47. Issues of ultimate liability are separate inquiries, and are properly reserved for a full trial on the merits. *Walker Ins. Servs.,* 108 S.W.3d at 549; *French,* 94 S.W.3d at 746; *Ross F. Meriwether & Assoc., Inc. v. Aulbach*, 686 S.W.2d 730, 732 (Tex. App.—San Antonio 1985, no writ). Nevertheless, where jurisdiction turns on the existence of a necessary element of the plaintiff's case, the defendant can defeat jurisdiction by proving the non-existence of that fact. *French,* 94 S.W.3d at 746-47.

**Personal Jurisdiction Over Nonresident Defendants**

A Texas court may exercise personal jurisdiction over a nonresident defendant if it is authorized by the Texas long-arm statute and if it comports with constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The long-arm statute is satisfied by proof that the defendant was "doing business" in the state. *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 648 (Tex. App.—Houston [14th Dist.] 1992, no writ). The Civil Practice and Remedies Code lists a variety of activities that may constitute "doing business." Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997 & Supp. 2004). Because the broad language of the Texas statute allows it to reach as far as the federal Constitution permits, the due process analysis under state law is consistent with the federal test. *Schlobohm,*784 S.W.2d at 356. Accordingly, to

6

satisfy the constitutional prong, the plaintiff must first show that the defendant purposefully established minimum contacts with the state and, second, that the exercise of jurisdiction by the state does not offend the traditional notions of fair play and substantial justice. *S.A.V.*, 837 S.W.2d 80, 85 (Tex. 1992). One consideration in determining whether the contacts were purposeful is whether the defendant's actions toward the forum state were of such a nature that would make it reasonably foreseeable to him that those contacts could result in him being called into the forum to litigate. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A nonresident defendant's minimum contacts can be used to prove either specific or general jurisdiction. *S.A.V.*, 837 S.W.2d at 85. Specific jurisdiction requires a nexus, or a "substantial connection," among the defendant's purposeful contacts with the forum state and the underlying cause of action. *Id.* General jurisdiction requires a high degree of "continuous and systematic" contacts with the forum state, so that the defendant may be forced to litigate in Texas even if his contacts are not specifically connected to the underlying cause of action. *Schlobohm,* 784 S.W.2d at 357. "The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Id*.

The issue of whether it is constitutionally "fair play" to subject the nonresident defendant to jurisdiction in Texas depends on the following factors: "(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *S.A.V.*, 837 S.W.2d at 86. The defendant must

put forth a "compelling case that the presence of some consideration would render judgment unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). If the plaintiff has successfully established a defendant's minimum contacts with the forum state, it is unlikely that the defendant will be able to meet its burden at this stage because the minimum contacts analysis already contains several fairness protections. *Schlobohm,*784 S.W.2d at 357-58. Nevertheless, the fair play and substantial justice prong of the jurisdictional inquiry still plays an important role as a final check on constitutionality. *Id.* at 358.

**Is there Sufficient Evidence to Affirm the Trial Court's Denial of Appellants' Special Appearance?**

This jurisdictional inquiry turns on whether Jerome and/or JWA personally engaged in contacts with Texas sufficient to confer jurisdiction over them. Jerome and JWA challenge the trial court's exercise of jurisdiction by asserting that they adequately negated all jurisdictional facts pleaded by First Metro and that there is insufficient evidence in the record to support either specific or general jurisdiction. Because both parties focused on the specific jurisdiction argument, we begin our analysis there.

### *Specific Jurisdiction over Jerome and JWA*

In order to prevail on the contention that there is no basis for specific jurisdiction, appellants must show that not even a scintilla of evidence in the record supports the legal conclusion that Jerome and/or JWA had purposeful minimum contacts with Texas in "substantial connection" to the facts of the underlying suit, and that the implied fact findings in support of that conclusion are

8

contrary to the great weight of the evidence in the record. *See BMC Software Belgium, N.V.,* 83 S.W.3d at 795 (holding that if the trial court declines to issue specific findings of fact and conclusions of law, then findings in support of the judgment are implied from the record evidence, but may be challenged for sufficiency when a full record is provided on appeal); and *French,* 94 S.W.3d at 744 (explaining the burdens of proof). Appellants failed to meet that burden.

Two essential contacts, entered into by Jerome and/or JWA in connection with the underlying lease agreement, support the exercise of specific jurisdiction over appellants: (1) Jerome's execution of the power of attorney to Gary, coupled with the broad authority it gave Gary to act on behalf of Jerome and/or JWA in Texas, and (2) Jerome's transmission of his financial statement to Gary, particularly in light of Jerome's knowledge that Gary had the power of attorney to act in his place.

Jerome first entrusted Gary with the power of attorney in October 2000, by filling out and signing a statutory durable power-of-attorney form.[2] The form begins with bold, capitalized text stating, "NOTICE: THE POWERS GRANTED IN THIS DOCUMENT ARE BROAD AND SWEEPING. . . . TO WITHHOLD A POWER, YOU MUST CROSS OUT EACH POWER WITHHELD." Jerome did not cross out any of the listed powers. By the plain language of the document, then, Gary was granted extensive authority, including the authority to act for Jerome in "[r]eal estate transactions, . . . [b]anking and other financial institution transactions, [b]usiness operating transactions, . . . [and] [t]ax matters." The form also provides a space to "give special

---

[2] Although Jerome's name was signed by Barbara Jacobs, a long-time business associate at JWA, Jerome acknowledged in his deposition that Jacobs had his permission to affix his signature on the power-of-attorney forms.

9

instructions *limiting or extending* the powers granted to your agent." (Emphasis added.) Here, the Pagedale property address is typed in, without any reference to whether it was intended as a limit or an extension of Gary's power. In April 2001, Jerome executed a second form, again naming Gary as his attorney-in-fact, not crossing out any listed power, and including the Pagedale property address under the special instructions section. Appellants contend that, by noting the Pagedale property as a special instruction, Gary's power to act as Jerome's and/or JWA's attorney-in-fact was specifically limited to actions in connection with that residence. Other evidence in the record, however, supports the opposite conclusion.

The form expressly provides that if no powers are specifically crossed out, then all are granted. The printed words on the power-of-attorney documents are conspicuously typed and are unambiguous in their meaning. The record also evidences a third power of attorney executed by Jerome in August 2002 that, when compared with Jerome's two previous grants of power of attorney, supports the trial court's implied finding that Jerome knowingly granted broad powers to Gary. Jerome used the same statutory form for the third power of attorney as he had with Gary, but this time naming Steven Wright, another of his sons, as the agent. On Steven's form, Jerome again listed the Pagedale property under the special instructions. Unlike the "broad and sweeping" powers executed to Gary, when Jerome executed the power of attorney to Steven, Jerome crossed out every single power listed, except for "real estate transactions," and he put his initials next to that power, limiting Steven's powers to "real estate transactions."

Regarding specific jurisdiction, appellants assert that "the only real fact issue is whether Gary Wright had authority to sign on behalf of [Jerome] or JWA." They contend that if

10

Gary lacked the authority to act on Jerome's behalf in entering the lease, then no contract existed, and thus there is no basis for specific jurisdiction. Appellants' argument is based on the principal that, where the sole cause of action is breach of contract, then the nonresident defendant can defeat specific jurisdiction by proving the non-existence of that contract, thereby nullifying any purposeful contacts by the defendant in connection with the underlying dispute. *See Ross F. Meriwether & Assoc., Inc.*, 686 S.W.2d at 732. Although this is a correct statement of the law, appellants have failed to meet their burden to demonstrate the non-existence of the contract in this case.

The differences in the powers of attorney executed to Gary and Steven, coupled with the plain language of the statutory form, provide sufficient evidence for the trial court to find that Gary's authority was "broad and sweeping," rather than limited to transactions with the Pagedale property. Appellants have not met their burden of showing this finding to be contrary to the overwhelming weight of the evidence, and have therefore failed to prove the non-existence of the contract.[3] By executing the powers of attorney to Gary, Jerome engaged in a purposeful action. Because that authority was used by Gary to enter into the commercial lease at issue, Jerome's execution of the powers of attorney supports specific jurisdiction over appellants.

---

[3] Although we find that appellants have not conclusively proven that a contract did not exist, we need not go so far as to hold that First Metro has in fact proven the existence of a contract. The jurisdictional inquiry merely requires a determination of whether appellants engaged in purposeful, minimum contacts toward Texas in connection with the underlying dispute. All other issues are properly reserved for trial on the merits. *See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 554 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (Declining to "impermissibly stray into the liability question," the court stated that, in deciding the jurisdictional inquiry, "the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case.").

11

A second purposeful contact by Jerome that formed a nexus between appellants, Texas, and the underlying dispute occurred on November 1, 2001, when Jerome transmitted by facsimile to Gary a copy of his financial statement, in response to Gary's request.[4] Appellants claim Jerome was unaware that his financial statement would be used to help Gary obtain the commercial lease. The record does not support this argument. Despite testifying that he would like to see his father exonerated, Gary also testified that he requested a copy of Jerome's financial statement for the purpose of showing it to the leasing agents, First Metro, and that Jerome gave him permission to show it to them. Shortly after this conversation, Jerome permitted his secretary to send Gary a copy of his financial statement. Jerome was aware that Gary was armed with a general power of attorney to act on his behalf at the time he provided Gary with a copy of his financial statement.

This evidence provides sufficient support for the trial court's implied finding that Jerome sent his financial statement to Texas as a means of helping Gary obtain a commercial lease. Such a finding amounts to another purposeful contact by Jerome in substantial connection with the underlying dispute, which supports the trial court's conclusion that specific jurisdiction is properly exercised over Jerome and JWA. Appellants have not adduced sufficient evidence to meet their burden of showing that the factual findings are contrary to the great weight of the evidence, or that the legal conclusions are not supported by even a scintilla of evidence in the record.

---

[4] As with the powers of attorney, it was technically Barbara Jacobs who sent the fax, but Jerome acknowledged in his deposition that Jacobs would not have done so without checking with him first, and that it was appropriate for Jacobs to fax the statement to Gary.

12

*General Jurisdiction Over Jerome and JWA*

The parties dispute whether it is proper to exercise general jurisdiction over appellants based on Jerome's visits to Texas, his sworn statement that he was a Texas resident, and his financial support of Gary, including the purchase of a home in Texas, the leasing of two cars in Texas, and an assortment of money transfers to Texas totaling nearly $135,000. The trial court denied appellants' special appearance without making specific findings of fact or conclusions of law; we can therefore affirm the order based on a finding of either specific or general jurisdiction. Because we find sufficient evidence to support the exercise of specific jurisdiction, we need not decide whether appellants' contacts with Texas were continuing and systematic enough to support the exercise of general jurisdiction.

*Fair Play and Substantial Justice*

Having determined that Jerome had sufficient minimum contacts with Texas, we now turn to whether it violates the Constitution's traditional notions of fair play and substantial justice to subject appellants to litigation in Texas. *S.A.V.*, 837 S.W.2d at 85-86. It is the nonresident defendant's burden to "present a compelling case that . . . jurisdiction in the forum state [is] unreasonable." *Kelly Inv., Inc. v. Basic Capital Mgmt.*, 85 S.W.3d 371, 376 (Tex. App.—Dallas 2002, no pet.) (citing *Burger King Corp.,* 471 U.S. at 477). Appellants do not argue that litigating in Texas would place an unreasonable hardship on either Jerome or JWA. *See Goodenbour*, 64 S.W.3d at 80 (finding that it did not offend due process to subject the defendant to jurisdiction in Texas after noting that there was "no evidence in the record showing that litigation in Texas would be unfair or unreasonable to [defendant]").

13

Moreover, there is sufficient evidence in the record to support the trial court's implied finding that, in balancing the burden on Jerome and JWA with the interests of Texas, First Metro, and the interstate judicial system, it does not offend fair play and substantial justice to deny appellants' special appearance. *See S.A.V.*, 837 S.W.2d at 86 (listing the factors to consider in this balancing test). Jerome has family connections in Texas, as well as sufficient resources to travel to Texas, as he has previously done. Jerome's contacts with the state were such that he could have reasonably expected being called into a Texas court to litigate. *See Coleman*, 83 S.W.3d at 806 (stating that the foreseeability to a defendant of litigating in Texas is one factor to consider). We conclude that the due process concerns are satisfied in this case.

**Motion for Damages**

In response to Jerome and JWA's appeal, First Metro seeks an award of damages pursuant to Texas Rule of Appellate Procedure 45. Tex. R. App. P. 45. Rule 45 allows the award of damages upon a finding that the appeal is frivolous, based on the evidence in the record. "In determining whether an appeal is frivolous, we apply an objective test. We review the record from the viewpoint of the advocate and ask whether the advocate had reasonable grounds to believe the judgment could be reversed. We exercise prudence and caution and deliberate most carefully before awarding appellate sanctions." *Mailhot v. Mailhot*, 124 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (internal citations omitted).

Because the jurisdictional inquiry turns on the resolution of essential underlying facts, we conclude that the appeal was not entirely frivolous. We conclude that the merits of this case do not justify the award of damages under Rule 45.

14

## CONCLUSION

Having determined that Jerome executed broad and sweeping powers of attorney to his son in Texas and that he sent his financial statement to Texas as a means to aid his son in obtaining a commercial lease, we find that appellants have purposefully engaged in minimum contacts with Texas in substantial connection to the underlying contract dispute. Therefore, we affirm the trial court's order denying appellants' special appearance.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   September 30, 2004

15