**ROWLAND & ROWLAND, P.C., Appellant,**

v.

**TEXAS EMPLOYERS INDEMNITY COMPANY, In Receivership; Mildred Mason; William F. Mason, II; Karen Reese; Connie Parmer; and Cinderella Dismukes, Appellees.**

No. 03–98–00048–CV.

Court of Appeals of Texas, Austin.

July 16, 1998.

Mahon B. Garry, Jr., Wright & Greenhill, P.C., Austin, for Appellant.

Steven C. Levatino, Davis & Wilkerson, P.C., Austin, for Texas Employers Indemnity Company.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This is an interlocutory appeal arising out of the denial of a special appearance filed by appellant Rowland & Rowland, P.C. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(7) (West 1997). The underlying suit involves a dispute between appellant Rowland & Rowland, a law firm representing the survivors of William Mason, and the appellee, Texas Employers Indemnity Company ("TEIC"), over the distribution of judgment proceeds awarded under the Tennessee Tort Claims Act. In one point of error, Rowland & Rowland argues that the trial court's denial of its special appearance was erroneous. We will affirm.

## BACKGROUND

This case originally arose from the tragic death of William Mason, a Texas trucker, who was killed while acting in the scope of his employment. Mason was killed when his truck was struck by a rockslide in Cumberland County, Tennessee. His widow, Mildred Mason, successfully filed a workers' compensation claim for death benefits against TEIC. Mildred Mason was represented in her claim against TEIC by the Texas law firm of Webb, Stokes, Sparks, Parker, Junell & Choate, L.L.P. ("Webb–Stokes").

After TEIC began paying Mildred Mason weekly death benefits, she and her children, who are all non-dependent adults, filed a wrongful death action against the State of Tennessee under the Tennessee Tort Claims Act.[1] Because this cause of action had to be filed in Tennessee with the Tennessee Claims Commission, Webb–Stokes referred Mildred and her four adult children to a Tennessee law firm, Rowland & Rowland.

After the wrongful death litigation began, TEIC, through its local Tennessee counsel,

---

1. Mildred Mason's adult children who joined Mildred in filing a wrongful death claim against the State of Tennessee included William F. Mason II, Karen Reese, Connie Parmer, Billie D. Crimm, and Cinderella Dismukes. All of these children are Texas residents.

Morton, Lewis, King & Krieg, exchanged several letters with Rowland & Rowland regarding its subrogation interest in the wrongful death action. These letters informed Rowland & Rowland about the continuing death benefits TEIC was paying Mildred Mason and about TEIC's expectation of full payment for its subrogation claim. In response, Mitchell Cramer, a Rowland & Rowland attorney, sent a letter *directly* to TEIC's San Angelo office, stating the following:

> This letter is to confirm conversations and correspondence between this firm and the law firm of Morton, Lewis, King & Krieg in Knoxville. My understanding is that *we will continue to protect your subrogation claim without the necessity of Texas Employer's Indemnity Company being added as a party* and that I will allow your attorneys access to all pretrial discovery and keep them advised of developments as they occur. Your attorneys have furnished me information that your subrogation claim is $12,571.60 as of January 14, 1988, representing approximately fifty-six weeks of compensation benefits of $179.85 per week and paid medical expenses of $167.00. Further, it is my understanding that your subrogation claim also includes compensation benefits of $179.85 per week and that you are to continue paying Mrs. Mason for her life subject to her being unmarried. I am not in a position to either confirm or deny the amount set forth in your attorney's letter. I am sure that when this matter is concluded that there will be additional subrogation interest. Suffice to say that we will be in a position to review all of these with you at the time the matter is concluded.
> We continue to actively represent Mrs. Mason and *will continue to represent your interests in this matter.*

(Emphasis added).

Relying on these representations, TEIC did not intervene in the Tennessee litigation.

In 1991, Rowland & Rowland litigated the wrongful death claim against the State of Tennessee. In September 1996, the Tennessee Claims Commission awarded Mildred Mason and her adult children $217,000.[2] Rowland & Rowland's distribution of the $217,000 forms the basis of the underlying lawsuit.

## THE CONTROVERSY

Mildred Mason, her adult children, and the Receiver for TEIC [3] were unable to agree on the amount of the recovery subject to the workers' compensation lien. Mildred Mason conceded that her share of the recovery should be paid to TEIC. However, the children claimed that, since they were not beneficiaries under the Texas Workers' Compensation Act, their share of the recovery was *not subject to the lien.* TEIC claimed that the *entire* recovery was subject to the lien and therefore should be satisfied *before* any member of the Mason family recovered anything. After repeated attempts to reach an agreement failed, Rowland & Rowland ignored TEIC's claim to the entire recovery and distributed the proceeds by paying Mildred Mason's share of the recovery to TEIC, and dividing the rest between the attorneys and four of Mildred's adult children.[4]

In February 1997, TEIC filed suit against Rowland & Rowland alleging that Rowland & Rowland's representations and subsequent conduct (i.e., the distribution of money to Mason's surviving children) constituted breach of contract, conversion, fraud, and negligent misrepresentation. In response to TEIC's petition, Rowland & Rowland filed a special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure. In support of its special appearance, Rowland & Rowland argued, as it does here, that the trial court lacked *in personam* jurisdiction to hear TEIC's claims because Rowland & Rowland lacked the necessary "contacts"

---

2. It is not clear from the record why it took five years for the Tennessee Claims Commission to render its judgment.

3. In March 1992, TEIC was placed into receivership. The receiver initiated the underlying cause of action to recoup TEIC's subrogation interest.

4. The fifth child, Billie D. Crimm waived her interest in the recovery in favor of her siblings.

with Texas as required by the due process clauses of both the federal and state constitutions. The special appearance was referred to a Special Master, who recommended that it be denied on the grounds that Rowland & Rowland's contacts with Texas formed a sufficient basis for *specific* jurisdiction. Pursuant to the Special Master's recommendation, the trial court rendered its order denying the special appearance. Rowland & Rowland filed this interlocutory appeal presenting only one issue: whether the trial court erred in assuming *in personam* jurisdiction over Rowland & Rowland. We will overrule the issue presented and affirm the trial court's denial of the special appearance.

## DISCUSSION

■ The constitutional standards for determining personal jurisdiction over a nonresident defendant are well established. *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex. 1996); *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996); *National Indust. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995); *Guardian Royal Exch. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226–28 (Tex. 1991); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). "Suffice it to say that the rule in these cases is that a state court can take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *CMMC,* 929 S.W.2d at 437.

■ The United States Supreme Court has refined the minimum contacts analysis into specific and general jurisdiction. *See Guardian Royal,* 815 S.W.2d at 227. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Id.* However, the contact must have resulted from the nonresident

defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *Id.* Furthermore, the nonresident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries "that arise out of or relate to" those activities. *Id.* at 228. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.*

■ General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, but there are continuous and systematic contacts between the nonresident defendant and the forum state. *Id.* When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state. *Id.* In the present case, it is undisputed that the trial court lacked *general* personal jurisdiction to hear TEIC's claims against Rowland & Rowland.[5] We will therefore only examine whether the trial court erroneously determined that it had *specific in personam* jurisdiction over Rowland & Rowland.

■ As stated above, specific jurisdiction refers to jurisdiction in which the cause of action arises out of, or is substantially connected with, the actual contact with the forum. *Id.* at 227; *Memorial Hosp. Sys. v. Fisher Ins.,* 835 S.W.2d 645, 649 (Tex.App.— Houston [14th Dist.] 1992, no writ). Thus, in analyzing minimum contacts, it is not the number, but rather the *quality* and *nature* of the nonresident's contacts with Texas that are important. *See Memorial Hosp. Sys.,* 835 S.W.2d at 649.

In the present case, we conclude that Rowland & Rowland had at least two purposeful contacts with Texas. The first "contact" was Rowland & Rowland's letter which was sent *directly* to TEIC's San Angelo office confirm-

---

5. Rowland & Rowland is a Professional Corporation, incorporated under the laws of the State of Tennessee. It is not a resident of the State of Texas; it is not required to, nor does it maintain a registered agent in Texas; it does not actively solicit business in Texas, nor does it maintain a place of business in Texas; it has no employees, agents, real property, or tangible property in Texas; and finally, it is not a party to any contract providing for performance in Texas. Therefore, we hold that, on the strength of these facts, Rowland & Rowland did not have "continuous and systematic" contacts such that the trial court could claim *general* jurisdiction over the case.

ing that the firm would "continue to protect" the subrogation interests of TEIC "without the necessity of TEIC being added as a party" to the wrongful death action in Tennessee. The second was Rowland & Rowland's distribution of a *substantial portion* of the $217,000 wrongful death judgment to Texas residents. Specifically, Rowland & Rowland *unilaterally* decided to distribute $24,111.11 to the Texas law firm of Webb–Stokes, and a total of $94,416.07 to four of William Mason's surviving adult children, all of whom are residents of Texas.

Furthermore, it was these specific "contacts" which give rise to the claims TEIC asserts against Rowland & Rowland. In particular, it is TEIC's contention that Rowland & Rowland's promise to "protect" its subrogation interest was breached or misrepresented when the firm distributed the proceeds to Mason's four non-dependent children before satisfying TEIC's subrogation lien. Whether Rowland & Rowland's actions were proper is not before us today. All we decide is that Rowland & Rowland's promise to "protect" TEIC's subrogation interest *in Texas* and Rowland & Rowland's distribution of substantial proceeds *in* Texas are sufficient *purposeful minimum contacts* with this State to satisfy due process.

■■■ Having determined that Rowland & Rowland had sufficient minimum contacts in Texas, we must now decide whether the state court's assertion of *in personam* jurisdiction comports with "traditional notions of fair play and substantial justice." *See Guardian Royal*, 815 S.W.2d at 228. In this inquiry it is incumbent upon the defendant to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* at 231 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.; see also Schlobohm*, 784 S.W.2d at 358 (it has become less likely that exercise of jurisdiction will fail fair-play analysis).

In support of its claim that personal jurisdiction in this case would offend traditional notions of fair play and substantial justice, Rowland & Rowland argues it would be unfair to require "a small law firm" to litigate a case "1500 miles from home." Moreover, Rowland & Rowland argues that Texas has "no special interest in [the] dispute, which involves the distribution of the proceeds of a Tennessee wrongful death judgment." Finally, Rowland & Rowland argues that Tennessee would be the "most efficient" forum to resolve the dispute because Tennessee's laws of descent and distribution will be important to the case. We disagree.

The State of Texas has a substantial interest in this case, and the exercise of jurisdiction over Rowland & Rowland will not offend traditional notions of fair play and substantial justice. First, the mere fact that Rowland & Rowland is not physically located in Texas is not persuasive in deciding personal jurisdiction. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (it is inescapable fact of modern commercial life that substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating need for physical presence within state in which business is conducted). Second, we conclude that Texas courts have an interest in cases where there is division of a significant portion of judgment proceeds among Texas residents arising from the wrongful death of a Texas resident. Finally, there is an abundance of case law in which Texas courts have manifested their interest in examining settlements in third-party actions to ensure an insurance carrier's right to subrogation. *See, e.g., Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 659 (Tex.App.—Dallas 1993, writ denied) (subrogation rights are so strong that public policy dictates that compromising such rights supports cause of action); *Prewitt & Sampson v. City of Dallas*, 713 S.W.2d 720, 722–23 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (action will lie when party interferes with insurance carrier's subrogation rights). Therefore, we hold that Rowland & Rowland has not met its burden of showing that under the facts of this case, the exercise of *in personam* jurisdiction in Texas offends traditional notions of fair play and substantial justice.

437

We overrule the sole issue presented by Rowland & Rowland.

**CONCLUSION**

Having overruled the only issue in this interlocutory appeal, we affirm the trial court's order denying Rowland & Rowland's special appearance.