Motion for Rehearing Overruled; Opinion of August 30, 2007 Withdrawn;
Reversed and Rendered and Substitute Opinion Filed October 18, 2007








Motion for
Rehearing Overruled; Opinion of August 30, 2007 Withdrawn; Reversed and
Rendered and Substitute Opinion Filed October 18, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00146-CV

____________

 

ROBERT P. MARKETTE, JR. AND
GILLILAND & CAUDILL, L.L.P., Appellants

 

V.

 

X-RAY X-PRESS CORPORATION, Appellee

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 2006-07709

 



 

S U B S T I T U T E   O P I N I O N   O N   R E H E A R I N G

We withdraw our opinion issued August 30, 2007, and
substitute the following opinion.








Appellants appeal the trial court=s order denying
their special appearance.  Because we determine that appellee has not met its
burden of alleging facts showing that appellants= contacts with
Texas are substantially connected to the operative facts of the underlying
litigation, we reverse and render judgment dismissing this case for lack of
personal jurisdiction.

I.  Background

After appellee X-Ray X-Press Corporation (AX-Ray@), a Texas
corporation, was sued in Indiana by C&G Technologies, Inc. (AC&G@), it hired
appellant Gilliland & Caudill, L.L.P. (AGilliland@), an Indiana law
firm, to defend its interests.  Appellant Robert P. Markette, Jr., an attorney
with Gilliland who is licensed to practice law in Indiana, sent X-Ray a letter
in Texas via facsimile stating that he Awill be handling
the litigation currently pending in Washington County, Indiana.@  Markette also
enclosed a copy of Gilliland=s standard legal services contract, which
X-Ray signed in Texas and returned to Markette.  Immediately before the line
for X-Ray=s signature, the contract states:  AI have read and
understand the foregoing and wish to retain [Gilliland] to represent [X-Ray] in
litigation currently pending in Washington County[,] Indiana.@

Markette filed a motion to dismiss the Indiana suit for
lack of personal jurisdiction, which the Indiana court denied.  Markette then
wrote X-Ray a letter, which he emailed to X-Ray in Texas, providing legal
advice as to three options for proceeding.  This case centers around the first
option:








The first option is to take no
further action.  If [X-Ray] does not file an answer in this matter, [C&G]
will move for default judgment.  Assuming [X-Ray] ignores the motion, the Court
will grant judgment in favor of [C&G] for the amount it demanded in its
complaint.  At that time, [C&G] will institute enforcement proceedings in
order to collect the judgment.  [X-Ray] could, at that time, relitigate the
issue of jurisdiction.  Because [C&G] would likely need to use the
Texas court system to enforce the judgment, [X-Ray] could attack the
jurisdiction in a Texas court, which would be more likely to agree that Indiana
did not have jurisdiction over a Texas company.  However, if the Texas
court=s [sic] agreed
with the Indiana court, [X-Ray] would be saddled with a default judgment that
it would have to satisfy.

(emphasis
added).  X-Ray followed this first option and allowed C&G to obtain a
default judgment against it in the Indiana suit.  Thereafter, C&G filed a
suit in Texas to enforce the judgment, and X-Ray was ultimately required to
satisfy that judgment.

X-Ray sued Markette and Gilliland for legal malpractice and
many related claims, including fraud, negligent misrepresentation, breach of
fiduciary duty, and breach of contract.  Markette and Gilliland filed special
appearances.  The trial court initially granted their special appearances, but
thereafter, the court granted X-Ray=s motion for new
trial and reversed its ruling.  Markette and Gilliland then filed this
interlocutory appeal.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7)
(Vernon Supp. 2006) (allowing interlocutory appeal from denial of special
appearance).

                                                    II.  Analysis








Whether a trial court has personal jurisdiction over a
defendant is a question of law.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002); Schott Glas v. Adame, 178 S.W.3d 307,
312 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).  When, as
here, the facts underlying the jurisdictional issue are undisputed, we review
the trial court=s determination de novo.  Schott Glas,
178 S.W.3d at 312; see American Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 806 (Tex. 2002).  The plaintiff bears the initial burden of
pleading facts sufficient to establish personal jurisdiction.  Marchand,
83 S.W.3d at 793; Schott Glas, 178 S.W.3d at 313.  The burden then
shifts to the defendant challenging personal jurisdiction to negate all bases
of jurisdiction alleged by the plaintiff.[1] 
Marchand, 83 S.W.3d at 793; Schott Glas, 178 S.W.3d at 313.

The Texas long-arm statute governs Texas courts= exercise of
personal jurisdiction over a nonresident defendant.  See Tex. Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon 1997
& Supp. 2006); Schott Glas, 178 S.W.3d at 312.  The long-arm statute
reaches as far as federal constitutional due process will allow, and thus the
long-arm statute is satisfied if an assertion of personal jurisdiction comports
with due process.  See Moki Mac River Expeditions v. Drugg, No. 04-0432,
__ S.W.3d __, 2007 WL 623805, at *3 (Tex. Mar. 2, 2007); Schott Glas,
178 S.W.3d at 312.  Personal jurisdiction is proper when the nonresident
defendant has established Aminimum contacts@ with the forum
and the exercise of jurisdiction comports with A>traditional
notions of fair play and substantial justice.=@  Moki Mac,
2007 WL 623805, at *3 (quoting Int=l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)).  The touchstone of the minimum contacts
analysis is purposeful availmentCthe defendant=s contacts must
show that it purposefully availed itself of the privileges and protections of
the forum=s law to subject itself to jurisdiction there.  See
Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 784B85 (Tex. 2005).








A defendant=s contacts can give rise to either general
or specific jurisdiction.  General jurisdiction is based on continuous and
systematic contacts with the forum.  Moki Mac, 2007 WL 623805, at *4. 
Specific jurisdiction is based on purposeful contacts that give rise or relate
to the litigation.  Id.  In this case, X-Ray alleges only specific
jurisdiction.  Thus, for the trial court to have properly exercised specific
jurisdiction in this case, (1) Markette and Gilliland must have made minimum
contacts with Texas by purposefully availing themselves of the privilege of
conducting activities here and (2) their liability must have arisen from or
relate to those contacts.  See id.

In Moki Mac, the supreme court analyzed the
relatedness requirement of specific jurisdiction.  The court noted that neither
it nor the United States Supreme Court had given much guidance as to how
closely related a cause of action must be to the defendant=s forum activities
to support personal jurisdiction.  See id. at *7, 12.  After discussing
and rejecting three other approaches, the court determined that Afor a nonresident
defendant=s forum contacts to support an exercise of specific
jurisdiction, there must be a substantial connection between those contacts and
the operative facts of the litigation.@  See id.
at *7B12.  Thus, the
court held in Moki Mac that the Texas contacts of a Utah-based
expedition company were not sufficiently related to the cause of action because
the operative facts of the litigation principally concerned the negligence of
guides in Arizona, even though the plaintiff parents may have relied on the
company=s safety
representations made in the promotional materials it sent to Texas in deciding
to send their son on a fatal rafting trip in Arizona.  See id. at *1, 12B13.








The Moki Mac court analogized the facts of its case
to our previous decision in Brocail v. Anderson, 132 S.W.3d 552 (Tex.
App.CHouston [14th Dist.]
2004, pet. denied).  See Moki Mac, 2007 WL 623805, at *15.  Brocail
involved an injured former Detroit Tigers pitcher who underwent treatment by a
team doctor in Michigan.  Brocail, 132 S.W.3d at 555.  When the pitcher
decided to return to his home in Texas, the doctor prescribed follow-up
physical therapy treatments that were administered in Texas.  Id.  The
doctor faxed treatment prescriptions to Texas and communicated with the
physical therapists in Texas.  Id.  The pitcher sued the Michigan doctor
in Texas, asserting specific jurisdiction based on the doctor=s contacts with
Texas regarding his physical therapy and the doctor=s alleged
misrepresentation in Texas by failing to fully disclose the true extent of his
injuries to the physical therapists.  Id. at 558.  We rejected this
argument, stating that the pitcher Ais complaining
about a physical injury based on a course of treatment.  Any tort occurred in
the exercise of medical judgment in prescribing a course of physical therapy
from Michigan, not from the communication of that prescription to [Texas].@  Id. at
563.  The court in Moki Mac applied this analysis to its case, noting
that the injuries for which the parent plaintiffs sought recovery were based on
their son=s death in Arizona and that the relationship between
the operative facts of the litigation and the company=s Texas
promotional activities were too attenuated to satisfy due process.  See Moki
Mac, 2007 WL 623805, at *15.

We find Moki Mac and Brocail controlling in
this case.  X-Ray=s primary jurisdictional allegation is
that Markette provided incorrect legal advice about Texas law upon which it
relied to its detriment.[2] 
Markette exercised his legal judgment and formed his legal opinions in Indiana,
which he then communicated to X-Ray in Texas.  The operative facts of the
underlying litigation will focus primarily on Markette=s legal advice,
not the communication of that advice to Texas, and thus specific jurisdiction
does not arise in this case.  See Moki Mac, 2007 WL 623805, at *15; Brocail,
132 S.W.3d at 563. 








X-Ray argues that Markette=s act of giving
legal advice on Texas law directed to a Texas client is sufficient to establish
personal jurisdiction.[3] 
Despite appellants= assertion that it did not provide legal
advice on Texas law because it cited no cases or statutes and was merely
discussing possibilities, we conclude that advising X-Ray that it Acould attack the
jurisdiction in a Texas court, which would be more likely to agree that
Indiana did not have jurisdiction over a Texas company@ constituted legal
advice about Texas law.  (emphasis added).  However, that is still insufficient
to establish personal jurisdiction.  Markette=s legal judgment,
which will be the focus of the underlying litigation, was exercised in Indiana,
just as the doctor in Brocail exercised his medical judgment in
Michigan.  Moreover, the supreme court has rejected the notion of focusing on
where a defendant directed a tort or where the effects of tortious conduct will
be felt in determining specific jurisdiction.[4] 
See Michiana, 168 S.W.3d at 790B92.  Rather, we
analyze the degree of connectedness between the forum contacts and the
litigation to determine whether the operative facts of the litigation focus on
those contacts.  See Moki Mac, 2007 WL 623805, at *12B13.








Because we conclude that X-Ray has not met its burden of
pleading facts sufficient to give rise to specific jurisdiction because
Markette=s and Gilliland=s Texas conduct is
not substantially connected to the operative facts of the litigation, we need
not reach Markette=s and Gilliland=s second issue, in
which they argue that exercise of personal jurisdiction does not comport with
traditional notions of fair play and substantial justice.  We reverse the trial
court=s judgment and
render judgment dismissing this case for lack of personal jurisdiction.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Substituted Opinion on Rehearing filed October 18, 2007.

Panel consists of
Justices Yates, Seymore, and Edelman.*

 

 

 

 

 

 

 

 

 

 

 

*  Senior Justice
Richard H. Edelman sitting by assignment.









[1]   X-Ray makes several arguments as to how appellants
have not met their burden of negating all bases of jurisdiction.  We need not
consider these arguments because we conclude that the basic jurisdictional
facts alleged by X-Ray, which are not disputed, do not establish jurisdiction,
and thus X-Ray has not met its initial burden.





[2]  X-Ray also points to additional contacts showing
that (a) it entered an attorney/client relationship with Markette by signing a
contract that he sent to Texas, (b) Markette communicated with X-Ray about this
representation and his advice to X-Ray via telephone, facsimile, and mail, and
(c) it charged fees to X-Ray for these services.  However, neither the mere
existence of an attorney/client relationship between a resident client and an
out of state attorney nor the routine correspondence and interactions attendant
to that relationship are sufficient to confer personal jurisdiction.  See
Geo-Chevron Ortiz Ranch v. Woodworth, No. 04-06-00412-CV, 2007 WL
671340, at *3, 5 (Tex. App.CSan Antonio
Mar. 7, 2007, pet. denied) (mem. op.) (finding no personal jurisdiction,
despite out of state attorney=s
representation of Texas client, related trip to Texas, attending telephone
deposition in Texas, and communications with client); Klenk v. Bustamante,
993 S.W.2d 677, 682B83 (Tex. App.CSan
Antonio 1998, no pet.) (finding no personal jurisdiction over out of state
lawyer, stating that an attorney/client relationship and accompanying telephone
calls and correspondence to Texas client were insufficient); Myers v. Emery,
697 S.W.2d 26, 31B32 (Tex. App.CDallas
1985, no pet.) (finding that attorney/client relationship with Texas client,
attendant communication, and receipt of funds from Texas client did not
establish personal jurisdiction over out of state attorney).





[3]  X-Ray also asserts that the exercise of specific
jurisdiction is proper because Markette=s
act of giving legal advice on Texas law to Texas residents without local
counsel constitutes the unauthorized practice of law.  See Tex. Gov=t Code Ann. ' 81.101(a)
(Vernon 2005) (defining the practice of law as including Athe giving of advice@).  However, X-Ray cites no authority providing that an out of state
attorney giving legal advice to a resident client about the forum=s law constitutes the practice of law in that forum or
that such activity is sufficient to confer specific jurisdiction.  In the
absence of such authority, we decline to so hold.





[4]  The Michiana court specifically disapproved
of this court=s opinion in Memorial Hospital System v. Fisher
Insurance Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.CHouston [14th Dist.] 1992, no writ), in which we had
held that Aif the tortfeasor knows that the brunt of the injury
will be felt by a particular resident in the forum, it must reasonably
anticipate being haled into court there to answer for its actions.@  See Michiana, 168 S.W.3d at 792 n.81.  We
note that two of X-Ray=s primary authorities supporting jurisdiction against
appellants rely on Memorial Hospital.  See Tempest Broadcasting Corp.
v. Imlay, 150 S.W.3d 861, 874 (Tex. App.CHouston
[14th Dist.] 2004, no pet.); Cartlidge v. Hernandez, 9 S.W.3d 341, 347B49 (Tex. App.CHouston
[14th Dist.] 1999, no pet.).  X-Ray=s
other primary authority, though not relying on Memorial Hospital, is
distinguishable on its facts because the nonresident lawyer specifically
promised to protect the forum client=s
subrogation interest in Texas whereas here, Markette never promised to
represent X-Ray in Texas.  See Rowland & Rowland, P.C. v. Tex. Employers
Indem. Co., 973 S.W.2d 432, 435B36
(Tex. App.CAustin 1998, no pet.).