ACCEPTED
03-15-00335-CV
6373473
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/5/2015 4:11:54 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-00335-CV

---

## IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT AUSTIN, TEXAS

FILED IN
3D COURT OF APPEALS
AUSTIN, TEXAS
8/5/2015 4:11:54 PM
JEFFREY D. KYLE
Clerk

---

### HERBERT ROLNICK

*Appellant*,

v.

### SIGHT'S MY LINE, INC.; STEWART LANTZ; RIGGS, ALESHIRE & RAY, P.C.; BLAZIER, CHRISTENSEN, BIGELOW & VIRR, P.C.; ADAMS & GRAHAM, L.L.P.

*Appellees*.

---

On Interlocutory Appeal from the
200th Judicial District Court, Travis County, Texas

---

### BRIEF OF APPELLEE ADAMS & GRAHAM, L.L.P.

---

**Robert E. Valdez**
State Bar No. 20428100
revaldez@vjtlawfirm.com
**Joseph E. Cuellar**
State Bar No. 24082879
jcuellar@vjtlawfirm.com
**VALDEZ, JACKSON & TREVIÑO, P.C.**
Plaza Las Campanas
1826 N. Loop 1604 W. Suite 245
San Antonio, Texas 78248
210-598-8686 – Telephone
210-598-8797 – Fax
**ATTORNEYS FOR APPELLEE ADAMS & GRAHAM, L.L.P.**

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Index of Authorities ........................................................................................... ii

Issue Presented ................................................................................................... 1

      Did the trial court correctly apply this Court's precedent when it denied
      Appellant Rolnick's special appearance?

Statement Regarding Oral Argument .................................................................1

Statement of Facts .............................................................................................. 1

Summary of Argument .......................................................................................4

Argument.............................................................................................................4

    I.    Texas Courts May Exercise Jurisdiction Over Rolnick to the Full Extent
         Allowed by the United States Constitution ...............................................5

    II.   Rolnick Created Sufficient Minimum Contacts with Texas
         During His Representation of the Plaintiffs ..............................................6

    III.  This Court's Precedent Supports the Exercise of Jurisdiction
         Over Rolnick................................................................................................ 8

    IV.  Rolnick's Arguments Misapply the Specific Jurisdiction
         Analysis ....................................................................................................13

    V.   The Exercise of Jurisdiction Over Rolnick Does Not Offend
         Traditional Notions of Fair Play and Substantial Justice ........................15

Conclusion & Prayer ........................................................................................ 18

Certificate of Compliance .................................................................................19

Certificate of Service ........................................................................................19

# INDEX OF AUTHORITIES

## Cases

*Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenburg, Eig & Cooper, Chartered*,
364 S.W.3d 359 (Tex. App.—Eastland 2012, no pet.)...............................................14

*Ahrens & De Angeli, P.L.C. v. Flinn*,
318 S.W.3d 474 (Tex. App.—Dallas 2010, pet. denied)........................................14

*Ayeni v. State*,
440 S.W.3d 707 (Tex. App.—Austin 2013, no pet.)...............................................13

*Kelly v. Gen. Interior Constr., Inc.*,
301 S.W.3d 653 (Tex. 2010)....................................................................................5

*Gordon & Doner, P.A. v. Joros*,
287 S.W.3d 325 (Tex. App.—Fort Worth 2009, no pet.)........................................14

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
815 S.W.2d 223 (Tex. 1991).............................................................................15, 18

*Guidry v. U.S. Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) ......................................................................15, 16, 17

*Howell v. Tex. Worker's Comp. Comm'n*,
143 S.W.3d 416 (Tex. App.—Austin 2004, pet. denied) ........................................11

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)................................................................................................17

*Kelly v. Gen. Interior Constr., Inc.*,
301 S.W.3d 653 (Tex. 2010)....................................................................................5

*Markette v. X-Ray, X-Press Corp.*,
240 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2007, no pet.).........................15

*Michiana Easy Livin' Country, Inc. v. Holten*,
168 S.W.3d 777 (Tex. 2005)................................................................6, 8, 12, 13

ii

*Moki Mac River Expeditions v. Drugg*,
221 S.W.3d 569 (Tex. 2007)................................................................................5, 6

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
414 S.W.3d 142 (Tex. 2013)...............................................................4, 5, 6, 7, 17

*Proskauer Rose, LLP v. Pelican Trading, Inc.*,
No. 14-08-00283-CV, 2009 WL 242993 (Tex. App.—Houston [14th Dist.] Feb. 3,
2009, no pet.) (mem. op.).......................................................................................14

*Retamco Operating, Inc. v. Republic Drilling Co.*,
 278 S.W.3d 333 (Tex. 2009)..................................................................6, 7, 12, 14

*Rowland & Rowland, P.C. v. Tex. Emp'rs Indem. Co.*,
973 S.W.2d 432 (Tex. App.—Austin 1998, no pet.)....................8, 9, 10, 11, 13, 17

*Tex. Mut. Ins. Co. v. Ledbetter*,
251 S.W.3d 31 (Tex. 2008)...................................................................................10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)..........................................................................................10

*World-Wide Volkswagon Corp v. Woodson*,
444 U.S. 286 (1980)..............................................................................................16

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 17.041 ................................................................5

## ISSUE PRESENTED

Did the trial court correctly apply this Court's precedent when it denied Appellant's special appearance?

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Adams & Graham, P.C. does not believe oral argument would be helpful because Appellant's brief does not directly contest the applicability of this Court's precedent that Appellee cited in support of the trial court's denial of Appellant's special appearance. Should the Court decide to grant Appellant's request for oral argument, Appellee requests that it be permitted to participate as well.

## STATEMENT OF FACTS

Appellant Herbert Rolnick is a lawyer who lives and practices in the State of Florida. CR 502. For over twenty years, he has represented Appellee Stewart Lantz in a variety of legal matters, including the formation and sale of business entities. Appellee Sight's My Line, Inc. ("SML"), a retailer for eyeglasses formed in 2002, was one of those entities. CR 389–90. Although established as a Florida corporation, SML's real property, inventory, and other assets were located in Texas. *Id.* Lantz and SML are the Plaintiffs in the trial court.

In 2012, Lantz decided to sell SML to American Optical Services ("AOS"). CR 382. Rolnick, already familiar with SML and its Texas-based assets, was hired

1

by Lantz to negotiate the transaction with AOS. CR 391. Rolnick's compensation for his services was between $40,000 and $50,000. CR 394, 514.

As part of his representation, Rolnick determined that it made the most sense for Texas law to govern this transaction. CR 304, 506. Lantz and Rolnick then contacted Jason Ray, a partner at Appellee Riggs, Aleshire, & Ray ("RAR"). CR 384. Ray had previously represented Lantz in relation to administrative law issues with SML. CR 548. Lantz and Rolnick asked Ray to serve as Texas counsel for the sale of SML. CR 391. Ray agreed, but he also decided to consult with Paul Browder, a partner at Appellee Blazier, Christensen, Bigelow & Virr, P.C. (BCBV), regarding Texas-specific legal issues pertaining to the sale. CR 550.

Rolnick, however, remained in charge of the sale's negotiation. He continued to communicate with Jason Ray about issues related to the sale. CR 323, 325, 562. One of the tasks given by Rolnick to Ray was to review the draft sale documents, including the security agreement and promissory note to secure the transaction. CR 355. Ray consulted with Browder concerning those documents, CR 550, and eventually sent an annotated version to Rolnick. CR 486–89. One of his notes concerned the draft promissory note's statement that the UCC-1 identifying the secured assets would be filed in Delaware. CR  Ray's note asked "Where will the assets be held. Texas, right? Shouldn't the UCC-1 be filed where

the assets are located?" CR 489. Ray was not contacted about his notes or any other matter relating to the sale prior to the closing. CR 508, 553.

After the closing, Ray was contacted by Rolnick with a final instruction. CR 330. Rolnick directed Ray to file the UCC-1 with the Texas Secretary of State. CR 562. Ray arranged for Browder to fulfill this directive. CR 558.

AOS eventually defaulted on its obligations under the sale contract and Appellee Adams & Graham, P.C. ("A&G") was retained, on Ray's referral, to pursue litigation. CR 387. AOS, however, subsequently declared bankruptcy. In the bankruptcy litigation, Lantz was determined to be unsecured creditors because the UCC-1 securing the transaction was not filed in Delaware, the state in which the AOS was incorporated. CR 686. When Lantz contacted Rolnick about the failure to secure his interest in SML's assets, Rolnick blamed Ray for the decision to file the UCC-1 in Texas. CR 512.

Plaintiffs filed suit against the Texas law firms, alleging legal malpractice related to the sale of AOS. CR 3–10. After RAR joined Rolnick as a third-party defendant, CR 17–20, the plaintiffs amended their pleadings to add Rolnick as a direct defendant. CR 137–45. Rolnick filed unsworn special appearances, CR 147–158, 582–86, and limited discovery was conducted on the jurisdictional issue. After a hearing and considering the evidence in the record, the trial court overruled

Rolnick's special appearance without issuing findings of fact or conclusions of law. CR 697.

## SUMMARY OF ARGUMENT

The trial court properly denied Rolnick's special appearance because Rolnick reached out and created contacts with Texas during his representation of the Plaintiffs in the sale of SML. Those contacts are substantially related and give rise to the Plaintiffs' cause of action for legal malpractice against him.

In addition, this Court has previously decided a case with similar facts in favor of finding personal jurisdiction over a nonresident law firm, and no intervening changes in the caselaw have undermined the basis for the Court's earlier opinion.

## ARGUMENT

The trial court correctly overruled Rolnick's special appearance because (1) Rolnick's contacts with Texas show purposefully availed himself of the benefits of conducting business in Texas and the operative facts of this litigation arise from those contacts; and (2) the trial court's exercise of jurisdiction over Rolnick does not offend traditional notions of fair play and substantial justice. In reviewing that decision, this Court analyzes de novo whether the trial court can exercise personal jurisdiction over a nonresident defendant. *Moncrief Oil Int'l, Inc. v. OAO Gazaprom*, 414 S.W.3d at 150. However, because the trial court did not

4

issue findings of fact and conclusions of law, this Court must imply all relevant facts necessary to support the denial that are supported by the evidence. *Id.*

## I. Texas Courts May Exercise Jurisdiction Over Rolnick to the Full Extent Allowed by the United States Constitution

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE § 17.041, *et seq*. "The broad 'doing business' language in Texas's long-arm statute allows the trial court's jurisdiction to 'reach as far as the federal constitutional requirements of due process will allow.'" *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)). In other words, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac*, 221 S.W.3d at 575.

"Personal jurisdiction is consistent with due process 'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.'" *Kelly*, 301 S.W.3d at 657 (quoting *Moki Mac*, 221 S.W.3d at 575). "A defendant establishes minimum contacts with a forum when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Montcreif Oil*, 414 S.W.3d at 150

(quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

## II. Rolnick Created Sufficient Minimum Contacts with Texas During His Representation of the Plaintiffs

Rolnick's contacts with Texas over the scope of his representation of the SML sale meet the constitutional minimum requirements for specific jurisdiction. "A nonresident's contacts can give rise to either specific or general jurisdiction." *Retamco Operating*, 278 S.W.3d at 338. "Specific jurisdiction … arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Id.* The specific jurisdiction analysis focuses on the relationship between the defendant, the forum, and the litigation. *Moncrief Oil*, 414 S.W.3d at 150. There are three aspects to the purposeful availment analysis: first, only the defendant's contacts with the forum count, not the unilateral contacts of another; second, the acts must be purposeful, not random, isolated, or fortuitous; third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). In addition, there must be a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

Rolnick entered into a representation with the Plaintiffs that personally benefitted him to the tune of at least $40,000. As Rolnick had previously formed SML for Lantz, the trial court could have concluded that Rolnick was aware his representation would involve the sale of Texas based assets and inventory at the time he was hired. Rolnick chose to apply his legal expertise knowing there was a strong probability he would have to consult Texas practitioners. *Cf. Retamco Operating*, 278 S.W.3d at 340 (reasoning a defendant's contacts with Texas were not the unilateral result of a third-party's actions because "[defendant] was a willing participant in a transaction with an affiliated Texas company to purchase Texas real property.").

And indeed, after Rolnick suggested changing the law governing the promissory note and security agreement to Texas law, Lantz asked Rolnick to supervise Texas lawyers in ensuring the agreement was up to the standards of Texas law. Rolnick apparently did not consider terminating his representation at this point, but willingly continued his representation of Rolnick. *Cf. Moncrief Oil*, 414 S.W.3d at 153 ("Unlike in *Michiana*, the [defendants] had a 'say in the matter.'"). The evidence before the trial court shows that Rolnick communicated with Jason Ray in Texas several times over a two month period to discuss the issues in the transaction and to direct the scope of Ray's representation regarding his review of the sale documents. Approximately two months later, Rolnick issued

7

another directive to Ray: file the UCC-1 with the Texas Secretary of State's office. Rolnick entered into his representation knowing he would likely have contacts such as the foregoing with Texas, and he derived benefits from that representation. This makes his contacts with Texas deliberate, not fortuitous, and beneficial to him.

One of the directives given by Rolnick to Ray was the instruction to file the UCC-1 in Texas. The decision and directive to file the UCC-1 in Texas, and not Delaware, is the basis for Plaintiffs' lawsuit for legal malpractice and RAR's third-party petition. This satisfies the substantial connection test. It is also important to note that whether these actions in fact breached a standard of care, and were thus tortious, is not at issue at this point and this analysis properly focuses on Rolnick's actions alone. *See Michiana*, 168 S.W.3d at 792 (holding specific jurisdiction cannot turn on whether the defendant's contacts were tortious, rather than the contacts themselves).

### III. This Court's Precedent Supports the Exercise of Jurisdiction over Rolnick

This Court has previously confronted a similar set of circumstances and held that the constitutional requirements for personal jurisdiction had been met. *See Rowland & Rowland, P.C. v. Tex. Emp'rs Indem. Co*., 973 S.W.2d 432 (Tex. App.—Austin 1998, no pet.). In *Rowland*, the defendant was a Tennessee law firm. *Id.* at 433. The law firm represented the wife of a deceased trucker and their adult

children, all Texas residents, in wrongful death actions against the State of Tennessee. *Id.* Before the filing the wrongful death suit, the wife had successfully claimed benefits from her husband's Texas workers' compensation carrier. *Id.* The carrier corresponded with the defendant law firm about its subrogation interest in the Tennessee legislation for the benefits it had paid and expected to pay to the spouse. *Id.* at 433–34. The firm sent a letter to the carrier promising to protect the carrier's subrogation claim without the necessity of the carrier's intervention. *Id.* at 434. The firm successfully recovered on the claimant's and her children's wrongful death claims. *Id.* But the firm, the wrongful death claimants, and the carrier could not come to an agreement about whether the entire award was subject to the carrier's subrogation interest or just the spouse's share. *Id.* The firm distributed part of the award to some of the wrongful death claimants without the carrier's approval, and the carrier sued the firm for breach of contract, conversion, fraud, and negligent misrepresentation. *Id.* The defendant law firm filed a special appearance challenging the Texas court's personal jurisdiction over it, and the special appearance was denied.

This Court held the trial court properly exercised specific personal jurisdiction over the law firm and affirmed the trial court's order. *Rowland*, 973 S.W.2d at 435–37. The Court identified two purposeful contacts with Texas that were sufficient to give rise to specific jurisdiction. *Id.* at 435–36. The first was the

9

letter sent directly from the firm to the carrier's Texas office confirming that it would continue to protect the plaintiff carrier's subrogation interest without the need for the carrier's intervention in the wrongful death suit. *Id.* The second was the distribution of a substantial portion of the wrongful death judgment to Texas residents. *Id.* at 436. This distribution cut the carrier directly out of its statutory right of recovery by distributing the recovery solely to the firm's Texas clients. *See Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 38 (Tex. 2008) ("When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion—the plaintiffs, the plaintiffs' attorney, and the defendants."). The Court properly did not consider whether the distribution was in fact tortious, but recognized that these contacts gave rise to the operative facts of the litigation. *See Rowland*, 973 S.W.2d at 436.

In this case, Rolnick was the attorney in charge of handling the transaction for the Plaintiffs, and Rolnick was paid a substantial sum for his representation. Rolnick directed Ray in the course of Ray's representation of the Plaintiffs. This occurred through emails, letters, and telephone calls to Texas lawyers to direct their representation of the plaintiffs. *See Rowland*, 973 S.W.2d at 436 (holding firm's representation to a Texas worker's compensation carrier that it would protect its subrogation interest, which occurred during its representation of its Texas clients, supported specific jurisdiction); *see also Walden v. Fiore*, 134 S. Ct.

10

1115, 1123 (2014) ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiffs or other parties."). One of the directives given by Rolnick to Ray was the instruction to file the UCC-1 in Texas. This concrete action and contact came about because Rolnick directed it as part of his representation of the Plaintiffs. *See Rowland*, 973 S.W.2d at 436 (holding allegedly tortious distribution of funds in derogation of worker's compensation lien was a contact supporting specific jurisdiction).

Despite A&G's reliance on Rowland in the trial court, CR 359–71, RR 37–40, Rolnick has not challenged *Rowland*'s applicability to this issue of personal jurisdiction. Because he is unwilling to confront this Court's precedent, the Court should affirm on basis that Rolnick has waived any argument over the application of *Rowland* to this case and should not permit him to challenge *Rowland*'s application in any reply brief. *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied). Admittedly, Rolnick may have made a cryptic reference to *Rowland* in a footnote. *See* Appellant's Brief p. 16, n.6. In that note, he states that the Court should not rely on cases that apply a "direct-a-tort" theory of jurisdiction because that theory was disapproved in *Michiana*. To the extent that the note may be construed as challenging the continuing validity of *Rowland* based on *Michiana*, A&G contends the cases are distinguishable.

11

In *Michiana*, the nonresident defendant was a seller of motor homes in Indiana that did not advertise in Texas or on the Internet. 168 S.W.3d at 784. The company received an order via a single phone call for a customized motor home from a Texas resident with delivery to be made in Texas. *Id.* The delivered motor home allegedly did not meet the Texas buyer's specifications, and he sued the defendant for misrepresentations. *Id.*

The narrow question considered by the Court was whether "suit can be brought in Texas based on a nonresident's alleged misrepresentations in a telephone call with a Texas resident." *Michiana*, 168 S.W.3d at 784. The Court held that jurisdiction based on a single, unsolicited phone call from a Texas resident was constitutionally impermissible, emphasizing that the quality of that single contact was insufficient to support jurisdiction. *Id.* at 787–92; *see also Retamco Operating*, 278 S.W.3d at 340 ("Unlike in *Michiana*, where the contacts with Texas and the sale at issue was 'initiated entirely by the [plaintiff],' … Republic here went well beyond answering a phone call from a Texas resident or shipping goods to Texas."). In dismissing another argument in favor of jurisdiction, the *Michiana* court emphasized that a defendant could not be sued in Texas or allegedly fraudulent misrepresentations in a single phone call because the trial court would be required to focus on the defendant's intent, instead of his actions when determining jurisdiction. *See Michiana*, 168 S.W.3d at 791; *see also*

12

*id.* at 790 ("[M]inimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant.").

*Rowland* is distinguishable from the direct-a-tort theory disapproved in *Michiana* because the court relied on the out-of-state firm's actions in Texas. First, although the worker's compensation carrier reached out to the firm initially, this was only after the firm had agreed to represent Texas plaintiffs. *Rowland*, 973 S.W.2d at 435–36. Second, the court emphasized the (allegedly) wrongful distribution of funds occurred in Texas. *Id.* at 436. These factors take the case well outside of *Michiana*'s disapproval of a direct-a-tort theory of jurisdiction or jurisdiction based on a single, unsolicited phone call.[1]

## IV.  Rolnick's Arguments Misapply the Specific Jurisdiction Analysis

Rolnick himself misapplies the proper jurisdictional analysis in two ways. First, he offers a litany of "undisputed evidence"—mostly concerning contacts he does not have with Texas—to show that he does not have sufficient minimum contacts with Texas. *See* Appellant's Brief, pp. 18-21. This is a misapplication of the minimum contacts test for specific jurisdiction, which requires the analysis of

---

[1] If the panel has concerns over the continuing viability of Rowland, Appellee requests that the Court consider the question en banc. *See Ayeni v. State*, 440 S.W.3d 707, 717 n.8 (Tex. App.—Austin 2013, no pet.) (Pemberton, J., concurring) ("We may not overrule a prior panel opinion of this court absent an intervening change in the law by the Legislature or a higher court or by decision of this court sitting en banc.").

"the quality and nature of the defendant's contacts, rather than their number."[2] *Retamco Operating*, 278 S.W.3d at 339. By the same principle, the number of contacts Rolnick does **not** have with Texas is irrelevant if the contacts he does have are sufficient.

Rolnick's second error is attempting to craft a special rule for lawyers that would prevent lawyers from being sued in a forum other than where they physically office and form their legal judgments. *See* Appellant's Brief, pp. 16–18, 23–24. Rolnick's proposed rule and application stem from overbroad readings of the caselaw. The much more modest rule actually applied by Texas courts is that "neither the mere existence of an attorney-client relationship between a resident client and an out-of-state attorney not the routine correspondence and interactions attendant to the relationship are enough to confer personal jurisdiction." *Proskauer Rose, LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.).

Moreover, as ably demonstrated in RAR's brief, the cases cited by Rolnick for his argument are all distinguishable on their facts.[3] *See* Brief of Riggs, Aleshire

---

[2] Rolnick's litany of bullet points might be relevant if any party were asserting Texas courts could exercise general jurisdiction over him, which would require "continuous and systemic contacts with the forum … ." *Moki Mac*, 221 S.W.3d at 575. That is not the case here.

[3] *Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenburg, Eig & Cooper, Chartered*, 364 S.W.3d 359 (Tex. App.—Eastland 2012, no pet.); *Ahrens & De Angeli, P.L.C. v. Flinn*, 318 S.W.3d 474 (Tex. App.—Dallas 2010, pet. denied); *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325 (Tex. App.—Fort Worth 2009, no pet.); *Proskauer Rose, LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993 (Tex. App.—Houston [14th Dist.] Feb. 3,

& Ray, P.C., pp. 18–22. In the cases cited by Rolnick, the out-of-state lawyers performed their legal work out of state and communicated it to clients or other persons in Texas. But unlike those cases, Rolnick **acted** to effectuate his legal judgment in Texas, thus creating contacts in Texas that support the exercise of jurisdiction over him. Nor were those other lawyers specifically tasked with directing the activities of persons acting in Texas as part of representing their clients. The communications Rolnick had with Ray were therefore not the normal interactions between a client and his lawyer.

## V. The Exercise of Jurisdiction Over Rolnick Does Not Offend Traditional Notions of Fair Play and Substantial Justice

Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) (internal quotation marks removed). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). When determining the fundamental fairness issue, the court should examine (1) the defendant's burden; (2) the forum

2009, no pet.) (mem. op.); *Markette v. X-Ray, X-Press Corp.*, 240 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

15

state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

The plaintiffs and the resident defendants in this case have a strong interest in Rolnick's appearance in this forum. Rolnick directed Ray to file the UCC-1 in Texas. If there is any liability on the part of any of the resident defendants, it likely stems in part from this instruction. If Rolnick is dismissed from this proceeding, Plaintiffs would have to file suit against him in Florida where he cannot sue the Texas law firm defendants. Or in the event that any of the resident defendants are found liable, they would have to pursue actions against Rolnick in a separate proceeding in Florida. This proceeding in Texas provides the most effective relief to the plaintiffs and the resident defendants. *See Guidry*, 188 F.3d at 631 ("Obviously the Guidrys have a strong interest in obtaining the convenient and efficient relief that can only be provided by a single lawsuit in their domicile against all defendants allegedly liable for the indivisible injuries the plaintiffs have suffered."); *see also World-Wide Volkswagon Corp v. Woodson*, 444 U.S. 286, 292 (1980) (reasoning that the Plaintiff's interest in obtaining convenient and efficient relief is an appropriate factor to consider when the plaintiff's power to choose the forum cannot adequately protect that interest). The judicial system's interest in the

efficient resolution of controversies weighs in favor of jurisdiction for the same reasons. *See Guidry*, 188 F.3d at 631 ("Moreover, the judicial system's concerns for the efficient resolution of controversies preponderates in favor of a single litigation inclusive of all defendants whose allegedly intentional and tortious acts have coalesced to injure the plaintiffs.").

Rolnick, again, emphasizes that he is not a resident of Texas. This fact is not determinative. *See Moncrief Oil*, 414 S.W.3d at 155 ("Subjecting the Gazprom Defendants to suit in Texas certainly imposes a burden on them, but the same can be said of all nonresidents. Distance alone cannot ordinarily defeat jurisdiction."); *Rowland*, 973 S.W.2d at 436 ("[T]he mere fact that Rowland & Rowland is not physically located in Texas is not persuasive in deciding personal jurisdiction."). Nor has he shown that litigating his liability in Texas in will present an unreasonable burden on him. *See Guidry*, 188 F.3d at 630. Florida may have an interest in regulating Rolnick's professional behavior, but so too does Texas where the effects of Rolnick's representation have been felt because the Texas assets that should have been secured were not. *See Moncrief Oil*, 414 S.W.3d 142 (Tex. 2013) (noting the Supreme Court has recognized "'it is beyond dispute that [a forum] has a significant interest in redressing injuries that actually occur within the State.'") (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984)). Moreover, Rolnick's directives may have caused Texas lawyers to become liable for

professional malpractice, and Texas has an interest in regulating the legal profession within its borders. *See Guardian Royal*, 815 S.W.2d at 231 (noting "[t]he state's regulatory interests are also an important consideration in deciding whether the exercise of jurisdiction is reasonable").

## CONCLUSION & PRAYER

For the foregoing reasons, Appellee Adams and Graham prays that this court overrule the Appellant's issues, affirm the trial court's order denying Defendant's special appearances, and grant any further relief to which it may be justly entitled under law or equity.

Respectfully submitted,

**VALDEZ JACKSON & TREVIÑO, P.C.**
Plaza Las Campanas
1826 N. Loop 1604 W. Suite 245
San Antonio, Texas 78248
Phone:    210-598-8686
Fax:        210-598-8797


  /s/ Robert E. Valdez
**Robert E. Valdez**
State Bar No. 20428100
**Joseph E. Cuellar**
State Bar No. 24082879

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word 2010, this brief contains 4,327 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4.

          /s/ Robert E. Valdez
          **Robert E. Valdez**

## CERTIFICATE OF SERVICE

On August 5, 2015 and pursuant to Texas Rule of Appellate Procedure 9.5, I electronically filed this Brief of Appellee Adams & Graham, L.P. with the Clerk of the Court using the eFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

| | |
|---|---|
| J. Hampton Skelton | Craig S. Hilliard |
| Brandon Gleason | STARK & STARK |
| SKELTON & WOOD | A Professional Corporation |
| 248 Addie Roy Road, Suite B-302 | P.O. Box 5315 |
| Austin, Texas 78746 | Princeton, New Jersey 08543-2315 |
| *Attorneys for Plaintiffs/Appellees* | *Attorneys for Plaintiffs/ Appellees* |
| | |
| Michael B. Johnson | Scott R. Kidd |
| THOMPSON COE, COUSINS & IRONS, L.L.P. | Scott V. Kidd |
| | KIDD LAW FIRM |
| 701 Brazos, Suite 1500 | 819 W. 11th Street |
| Austin, Texas 78701 | Austin, Texas 78701 |
| *Attorneys for Defendant/Appellee Blazier, Christensen, Bigelow & Virr, P.C.* | *Attorneys for Defendant/Appellee Riggs Aleshire & Ray, P.C.* |

Ruth Malinas
Tim T. Griesenbeck
Scott M. Noel
PLUNKETT & GRIESENBECK, INC.
1635 N. E. Loop 410 Suite 900
San Antonio, Texas 78209
*Attorneys for Defendant/Appellant*
*Herbert Rolnick*

                          /s/ Robert E. Valdez
                          **Robert E. Valdez**